IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL OPATHY CALHOUN,:
    *Plaintiff,*               :
                                    :
    v.                            :        CIVIL ACTION NO. 24-CV-1156
                                      :
ROSS, INC.,                   :
    *Defendant.*             :

## **MEMORANDUM**

**Pappert, J.**                                            **July 31, 2025**

       Michael Opathy Calhoun's Second Amended Complaint (ECF No. 13) asserts employment discrimination and retaliation claims against his former employer, Ross, Inc.  Ross moved to dismiss the case and compel arbitration (ECF No. 23) and the Court grants the motion.

I

       Calhoun initially used the Court's form Complaint to plead his case.  (*See* Compl. (ECF No. 2).)  He asserted claims pursuant to:  (1) Title VII of the Civil Rights Act, which prohibits employment discrimination based on race, color, gender/sex, religion, and national origin; (2) the Age Discrimination in Employment Act, which forbids employment discrimination based on age; and (3) the Americans with Disabilities Act, which prohibits employment discrimination based on an employee's disability or perceived disability.  (*Id.* at 4.)  He alleged that he was discriminated against based on his race ("Afro American"), color ("black/brown"), religion ("Christian"), gender/sex (male), and natural origin ("Black American/Native American").  (*Id.* at 6.)  He also

asserted that he was subjected to discrimination because of his age, stating that he was forty years old when the alleged discriminatory acts began. (*Id.*)

After granting Calhoun leave to proceed *in forma pauperis*, the Court dismissed the Complaint for failure to state a claim upon statutory screening. *Calhoun v. Ross, Inc.*, No. 24-1156, 2024 WL 1640986, at *1 (E.D. Pa. Apr. 15, 2024). The Court determined that Calhoun's allegations failed to allege a plausible claim for employment discrimination under Title VII because he did not explain how his treatment at work or his termination were based on his membership in one or more of the protected classes he identified. *Id.* at *3. Calhoun also failed to allege any facts to suggest that he suffered from a disability or was regarded as having a disability within the meaning of the ADA. Further, there were no allegations that Ross failed to reasonably accommodate a disability, or that Calhoun was replaced by a sufficiently younger employee in violation of the ADEA. *Id.* Finally, the Court concluded that Calhoun had failed to state a plausible claim for retaliation. *Id.* The Court dismissed Calhoun's claims without prejudice to him filing an amended complaint if he could provide the factual bases for his assertions. *Id.*

Calhoun filed an Amended Complaint, reasserting employment discrimination claims pursuant to Title VII, the ADEA, and the ADA. ((ECF No. 8) at 4.) Calhoun claimed Ross fired him, failed to stop harassment, failed to reasonably accommodate his disability, retaliated against him, and subjected him to unequal terms and conditions of his employment. (*Id.* at 5-6.) Calhoun asserted that he was discriminated against based on his race ("ArFro-American [sic]"), color ("black"), gender/sex ("male"), and age. (*Id.*)

In a July 15, 2024 Memorandum and Order, the Court dismissed Calhoun's Amended Complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *Calhoun v. Ross, Inc.*, No. 24-1156, 2024 WL 3433331, at *1 (E.D. Pa. July 16, 2024).  Like the initial Complaint, his second attempt failed to allege a plausible claim for employment discrimination because Calhoun failed to explain how his treatment at work or his termination were based on his membership in one or more of the protected classes.  *Id.* at *4.  Although Calhoun described uncivil conduct by coworkers, he did not link that treatment or any adverse action by his employer to his membership in a protected class or to unlawful retaliation by his employer.  *Id.* Calhoun also failed to allege any facts suggesting that he suffered from a disability or was regarded as having a disability within the meaning of the ADA.  *Id.*  The Court concluded that further opportunities to amend would be futile because Calhoun had already been given a chance to allege plausible claims.  *Id.*

On July 26, 2024, Calhoun filed a letter motion for reconsideration together with a proposed Second Amended Complaint.  *See* ECF No. 11.  In so doing, Calhoun noted that he "did not fully comprehend the deficiencies" and subsequently sought out "pro bono legal assistance to assist" him in drafting the latest iteration of his allegations. *Id.* at 5. On September 25, 2024, the Court reopened the case, granted Calhoun's motion for reconsideration, and directed the Clerk of Court to file the Second Amended Complaint.  *See* ECF No. 12.

Calhoun now asserts claims of employment discrimination and retaliation on account of his race and/or disability pursuant to Title VII, 42 U.S.C. § 1981, the ADA, and the Pennsylvania Human Relations Act.  *See* ECF No. 13 at 1.  On December 23,

2024, Ross filed its motion and the Court directed Calhoun to respond.  (ECF Nos. 23, 24.)  Ross seeks dismissal of the Second Amended Complaint and an order compelling arbitration of any claims against it pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. (Motion (ECF No. 23) at 1.)  Specifically, Ross asserts that it entered into a valid and enforceable Dispute Resolution Agreement with Calhoun on May 24, 2022 that governs his claims.  (ECF No. 23-1 at 4-5.)  Ross attached a copy of the Agreement to its Motion.  (ECF No. 23-2.)  Calhoun responded to Ross's Motion on January 21, 2025 contending that this case should remain in federal court because Ross had previously "disregarded all [of his] claims" and would not "correct the injustice" he was caused. (ECF No. 26 at 1.)

On April 24, 2025, the Court ordered Calhoun to show cause as to why this case should not be dismissed so that the parties' dispute may be arbitrated.  (ECF No. 27.) Specifically, Calhoun was told to set forth any reasons as to why the Agreement was not valid or should not be binding on him with respect to his latest claims.  (*Id.*)  The Court stated that in the event Calhoun failed to respond, it would conclude that the Agreement is authentic and integral to his claims such that it may be considered in adjudicating Ross's Motion.  (*Id.*)  On May 15, 2025, Calhoun filed a handwritten letter requesting that the Court "consider leaving the case in federal court" because "Ross hasn't submitted anything in writing stating that all court fees & costs would be paid by Ross."  (ECF No. 28.)

II[1]

Calhoun electronically signed the Agreement during his employee onboarding

process on May 24, 2022.  (*See* ECF No. 23-2.)  The introductory paragraph states, in

pertinent part, that:  "You and Ross agree that all 'Covered Disputes' will only be

resolved as described in this Agreement by final and binding arbitration, *not* by a court

or jury." (ECF No. 23-2 at 2) (emphasis in original).  The Agreement further provides

that:

> Covered Disputes include any and all disputes, differences, claims,
> causes of action, or controversies between you and Ross – or
> between you and any other Ross associate, agent, or employee –
> **arising out of or in any way related to your employment
> with Ross**, including but not limited to your application for
> employment, **your employment with, or separation of
> employment from Ross**, whether arising from contract
> (expressed or implied), torts or common law, statute (including
> regulations and ordinances), privacy (including statutory privacy
> violations of the Illinois BIPA and similar laws), public policy,
> constitution, or any other legal theory.  By way of example only,
> Covered Disputes include but are not limited to claims for: (1)
> negligence, (2) fraud or concealment, (3) defamation, (4) trade
> secrets, (5) unfair competition, (6) misclassification, (7) wage and
> hour violations (such as claims relating to wages, compensation,
> meal/rest periods, wage statements, expense reimbursements, etc.),
> (8) benefits, **(9) wrongful discharge, (10) retaliation** or
> whistleblower, **(11) harassment or discrimination,** (12)
> personal injury, (13) economic damages, (14) penalties and
> attorneys' fees and costs, and (15) violation of any federal, state, or
> local laws governing the employment relationship.

(*Id.*) (bolded emphasis added).  The Agreement says its "interpretation and

enforcement" is governed by the FAA, and provides for the mutual selection of a neutral

arbitrator, permits discovery pursuant to the Federal Rules of Civil Procedure, does not

---

[1] The factual allegations set forth in this Memorandum are taken from Calhoun's SAC
(ECF No. 13) and Ross's Motion (ECF No. 23).  The Court adopts the sequential
pagination assigned by the CM/ECF docketing system.

limit available remedies, and states that the arbitrator's decision will "be in writing, stating the essential findings of facts and conclusions of law." (*Id*.) Ross is also required to "pay all fees and costs unique to the arbitration (including the arbitrator's fees)." (*Id*.)

III

The Federal Arbitration Act enables judges to enforce a contract to arbitrate after we "hear the parties" and are "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" *Kitchengs v. Cintas Corp. No. 2*, 759 F. Supp. 3d 562, 569 (E.D. Pa. 2024) (citing 9 U.S.C. § 4). Because arbitration is a contractual matter predicated on the parties' consent, courts must treat arbitration agreements like other contracts and rigorously enforce their terms. *Yurth v. Experian Info. Sols., Inc.*, 622 F. Supp. 3d 89, 94 (E.D. Pa. 2022) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Pennsylvania and federal law both strongly favor enforcing arbitration agreements. *Kitchengs*, 759 F. Supp. 3d at 569; *Yurth*, 622 F. Supp. 3d at 94 (citing *AT&T Mobility LLC*, 563 U.S. at 339; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010). To compel arbitration pursuant to the FAA, a court must determine whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Fuentes v. Jiffy Lube Int'l, Inc.*, 692 F. Supp. 3d 471, 474 (E.D. Pa. 2023) (quoting *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (internal quotation marks omitted).

A motion to compel arbitration is evaluated under the same standard as either a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or a motion for summary judgment under Federal Rule of Civil Procedure 56, depending on the circumstances. *Mack v. Progressive Corp.*, No. 23-2430, 2024 WL 1120377, at *2 (E.D. Pa. Mar. 14, 2024) (citing *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

The Rule 12(b)(6) standard is appropriate where the claims the plaintiff brings in his complaint are subject to arbitration provisions that the defendant may submit in response to the complaint. *Mack*, 2024 WL 1120377, at *3 (citing *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642-KSM, 2022 WL 407396, at *3 (E.D. Pa. Feb. 9, 2022); *Parker v. Briad Wenco, LLC*, No. 18-4860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("If a party attaches an authentic arbitration agreement to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." (cleaned up)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to

discovery on the question of arbitrability," after which the court should consider the motion under the Rule 56 summary judgment standard. *Guidotti*, 716 F.3d at 776.

IV

While Calhoun does not reference the arbitration agreement in his Second Amended Complaint, "it is clearly integral to [his] claims." *Fuentes*, 692 F. Supp. 3d at 475 (quoting *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017); *Kitchengs*, 759 F. Supp. 3d at 570 (finding employment agreement integral to employment discrimination case). Further, "[Ross] attached the Agreement to its Motion," and Calhoun does not contest its existence or authenticity. *Id.*; *see also Eichlin v. GHK Co.*, 746 F. Supp. 3d 247, 252 (E.D. Pa. 2024) (concluding that the Rule 12(b)(6) standard applied because the defendant attached the arbitration agreement to its motion to compel and because Eichlin relies on no additional facts in disputing the motion); *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 (E.D. Pa. Mar. 21, 2016) (applying the motion to dismiss standard because "there is no lack of clarity regarding the agreement to arbitrate, and Plaintiff has not produced any additional facts sufficient to place the agreement to arbitrate at issue"). Calhoun does not dispute that he electronically signed[2] the Agreement nor does he challenge its enforceability. (ECF Nos. 26, 28.) He does not seek additional discovery or assert any additional facts pertaining to the agreement to resolve any disputes through arbitration. (*Id.*)

---

[2] An electronic signature constitutes a valid means to register legal assent. *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) (*per curiam*) (citations omitted).

Moreover, "[i]t would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt*, 2016 WL 2893350, at *2 n.1.  The Rule 12(b)(6) standard is the appropriate standard to apply here.  Because Ross attached the Agreement to its motion to compel, and Calhoun does not dispute its existence or authenticity, the Court may consider the Agreement without the need for further discovery.  *See* <u>Kitchengs</u>, 759 F. Supp. 3d at 570; _*Guidotti*, 716 F.3d at 776 (stating, under the Rule 12(b)(6) standard, "[w]e consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents") (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that even if a "[c]omplaint does not explicitly refer to or cite [a document] . . . the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited").  Thus, pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts plead in the Second Amended Complaint, construing them in the light most favorable to Calhoun.  *See* Fed. R. Civ. P. 12(b)(6).

Calhoun signed the Agreement and neither denies its existence nor objects to arbitration. He expresses concern only as to whether Ross will bear the fees and costs associated with arbitration.  (ECF No. 28.)  For a court to enter an order compelling arbitration there must be sufficient evidence that the parties consented to arbitration in an express agreement.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d

51, 54 (3d Cir. 1980). Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Eichlin*, 746 F. Supp. 3d 247, 254 (E.D. Pa. 2024) (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). In the employment context specifically, arbitration agreements are valid and enforceable even when imposed as a mandatory condition of employment. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The United States Supreme Court and Third Circuit Court of Appeals have held that statutory employment discrimination claims may be the subject of agreements to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding in age discrimination case that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("This duty [of the courts] to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) (finding "Title VII entirely compatible with applying the FAA to agreements to arbitrate Title VII claims"), *overruled on other grounds by Green Tree Financial Corp. Ala. v. Randolph*, 531 U.S. 79 (2000); *see also Hearon v. AstraZeneca LP*, No. 02-3189, 2003 WL 21250640 (E.D. Pa. Mar. 24, 2003) (compelling arbitration of employee's Title VII sex discrimination claims).

There is a valid and enforceable agreement to arbitrate between Calhoun and Ross. Calhoun does not dispute that he electronically signed the document during the onboarding process, and the Agreement's terms are clear, straightforward, and

sufficiently definite enough to be enforced.  *See Eichlin*, 746 F. Supp. 3d at 254 (citing *Soroko v. ATMOS, Inc.*, No. 11-6120, 2015 WL 5585350, at *5 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced because, *inter alia*, there was a certain basis for a court to provide a remedy under the arbitration provisions).)  The Agreement explicitly defines the claims to be arbitrated, and it explains the procedures by which arbitrations shall be conducted. (ECF No. 23-2.)  There is also adequate consideration.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").

The Agreement covers Calhoun's claims.  It applies to "any and all disputes . . . arising out of or in any way related to [Calhoun's] employment with Ross, including but not limited to your application for employment, your employment with, or separation of employment from Ross."  *See* ECF No. 23-2 at 2, *see also Kiesel v. Lehigh Valley Eye Ctr., P.C.*, No. 05-4796, 2006 WL 1985788, at *5-*6 (E.D. Pa. July 12, 2006) (holding arbitration agreements that contain broad language referring to "any controversy or disagreement between the parties" are enforceable).  More specifically, the Agreement encompasses claims for "wrongful discharge . . . retaliation . . . [and] harassment or discrimination."  *Id.*  Calhoun's  discrimination, retaliation, and failure to accommodate claims arise under federal and state law and are based solely upon his employment with Ross.

Finally, Ross's DRA has been previously enforced and applied by this Court and other federal courts.  *See, e.g.*, *Rimer v. Ross Dress for Less, et al.*, No. 17-02808, ECF

No. 5 (E.D. Pa. July 7, 2017) (ordering entry of a stipulation between Ross and a former employee compelling binding arbitration based on a similar agreement and dismissing the civil action with prejudice); *Martin v. Ross Stores, Inc.*, No. 15-5601, ECF No. 27 (N.D. Ill. June 24, 2015) ("Defendant has provided sufficient proof that Plaintiff electronically signed Defendant's dispute resolution agreement. By doing so, Plaintiff agreed to submit any employment claims she might have against Defendant to binding arbitration. Defendant's motion to compel arbitration [10] is therefore granted, and I am dismissing the Complaint . . . ."); *Steen v. Ross Stores, Inc., et al.*, No. 15-1381, ECF No. 22 (D. Ariz. Jul 21, 2015) (compelling arbitration and dismissing the action without prejudice).

**BY THE COURT:**

**/s/ Gerald J. Pappert**
**Gerald J. Pappert, J.**